UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HIAWATHA BURKS | ) | |
| | ) | |
| v. | ) | Cr. No. 02-095ML |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR OTHERWISE CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Comes now the United States of America, by an through its attorneys, Robert Clark Corrente, United States Attorney for the District of Rhode Island, and Adi Goldstein, Assistant U.S. Attorney, and hereby objects to the defendant's Motion to Vacate, Set Aside, or Otherwise Correct Sentence Pursuant to 28 U.S.C. § 2255 for the reasons stated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA

By Its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Adi Goldstein
ADI GOLDSTEIN
Assistant U.S. Attorney
RI Bar #6701
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email: adi.goldstein@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HIAWATHA BURKS | ) | |
| | ) | |
| v. | ) | Cr. No: 02-095ML |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR OTHERWISE CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

## I. INTRODUCTION

The petitioner, Hiawatha Burks(Burks), filed a motion pursuant to 28 U.S.C. § 2255 on October 23, 2007 to vacate his sentence. Burks raises a single issue in his petition: trial counsel was ineffective in not objecting to Burks' designation as a career offender at the time of sentencing. For the reasons set forth below, this contention is utterly frivolous. Although Burks did not raise this issue in either of his two sentencing hearings, or on his first appeal, the First Circuit considered the issue on Burks's second appeal and found it to be without merit. The government requests that Burks's petition be denied and dismissed.

## II. BACKGROUND and TRAVEL OF THE CASE

On November 20, 2002, a federal grand jury for the District of Rhode Island returned an eight count indictment against Burks.

Counts 1,2, and 3 charged that Burks distributed cocaine base on August 16, 22, and October 4, 2002. Count 4 charged that he distributed heroin on October 4, 2002. Counts 5 and 6 charged that on October 11, 2002, he possessed with intent to distribute cocaine and heroin. Count 7 charged that he possessed two firearms as a convicted felon. Count 8 charged that he possessed those two firearms in furtherance of a drug trafficking crime. On February 3, 2003, the United States filed an information pursuant to 21 U.S.C. § 851 alleging that in 1997 Burks had been convicted of three separate felony offenses in Rhode Island Superior Court: cocaine possession, possession of marijuana with the intent to distribute, and simple assault. The certified judgment of conviction was attached to the information, and it is attached here as Exhibit 1.

On May 15, 2003, Burks pleaded guilty before this court to seven counts of the Indictment. In exchange for pleading guilty, Burks received two substantial benefits: the government dismissed the 18 U.S.C. § 924(c) count (Count 8) and the sentencing information. At the plea hearing, Burks confirmed his agreement of the drug amounts involved in Counts 1-6, and agreed that he had a prior felony conviction.

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report. The PSR determined an offense level of 28 based on the quantity of drugs involved and the

presence of firearms. This offense level was trumped by the career offender provision, however, which established a base offense level of 32. The defendant received a two-point reduction in offense level based on his acceptance of responsibility. Thus, the total offense level was 30.

The PSR also set forth defendant's criminal record. The defendant had six criminal history points based on his adult convictions and the fact that he committed the instant offense while on probation. Although six criminal history points would normally place defendant in Criminal History Category III, the fact that defendant had a prior conviction for a crime of violence (felony assault with a dangerous weapon, N2/96-0237A) and a drug trafficking crime (possession of marijuana with intent to distribute, N2/97-0141A), placed him in the career offender criminal history category VI. Thus, the PSR found that the guidelines range for the defendant was 168-210 months.

Burks raised no objection to the PSR prior the sentencing hearing. He made no objection to the PSR at the first sentencing hearing, on August 7, 2003. At the hearing, Burks's counsel pressed a detailed and well-crafted motion for a downward departure. However, as the matter was before the court prior to Blakely v. Washington, 542 U.S. 296 (2004), the Court held that it lacked the discretion to depart below the guidelines range. The Court sentenced the defendant to 168 months, the bottom of

the range.

In his first appeal, Burks challenged his sentence based exclusively on the Supreme Court's decision in Blakely. When the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005), the parties filed a joint motion for a remand. As part of that motion, Burks agreed that "he did not challenge . . . the sentencing guideline calculations of the district court as calculated under a pre-Booker case law." It should be noted that Burks' appellate counsel was not his trial attorney.

On June 30,2005, this Court held a re-sentencing hearing. Again, there were no objections to the PSR. At the sentencing, Burks, speaking for himself and not through his attorney, questioned his career offender designation stating that he did not feel that he was a true career offender. Burks stated:

> "I really haven't committed the recidivism that it brings to call me a true career criminal. I haven't done any time. I've done 90 days in my prior. That's the only time I've done incarcerated. I haven't committed the same exact crimes, but I have committed crimes that I pleaded guilty to. . . ." (Sent Tr. 9-10).

The Court then explained to the defendant that his career offender designation was based simply on the fact that:

> " If you've committed two offenses before this one and you were 18 years old at the time, either of those offenses are either crimes of violence or drug trafficking offenses, and you had two of them, on the third one you're classified as a career offender. It's as simple as that." (Sent. Tr.

10).

The Court then explained that defendant's conviction for felony assault with a dangerous weapon and drug trafficking offenses qualified. Defendant then stated:

> "All right. Well, now that I understand that a little better, I mean, I'm just really going to stick with my original statement. I really just don't feel that I'm a true - - I'm a career offender. I really feel like I should be sentenced under the 168 months." (Sent Tr. 10-11).

Defendant's counsel moved for a sentence of 120 months -- four years below the guidelines range. The Court accepted defense counsel's argument and sentenced the defendant to 120 months - - precisely the sentence that he asked for. A sentence that was well below the career offender guideline. Indeed, this sentence falls below the range of sentences for Criminal History Category III at offense level 30.

**GOVERNING LAW**

A. MOTIONS UNDER 28 U.S.C. § 2255

Section 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion under 28 U.S.C. § 2255 is a substitute for habeas corpus. Relief is available under this section only if the same relief is available under the writ. Hill v. United States, 368 U.S. 424, 427 (1962). The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty. Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949).

In United States v. Addonizio, 442 U.S. 178, 184-185 (1979), the Supreme Court Stated:

> It has, of course long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment ... [U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited... The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice'... Similar limitations apply with respect to claimed errors of fact.

See also Davis v. United States, 417 U.S. 333, 346 (1974).

A collateral attack may not substitute for an appeal, and presents a higher threshold that a petitioner must clear in order to bring a claim. United States v. Frady, 456 U.S. 152, 165 (1982); Dirring v. United States, 370 F.2d 862, 865 (1st Cir. 1967). A defendant cannot raise in a federal habeas proceeding issues which he failed to raise at trial or on direct appeal absent a showing of cause for the failure and a showing of prejudice. Knight v. United States, 37 F.3d 769, 774 (1st Cir.

1994). Once a defendant's chance to appeal has been exhausted, there is a presumption that the conviction is fair and final. As the Supreme Court has pellucidly explained in United States v. Frady, "[o]nce the defendant's chance to appeal has been waived or exhausted ... we are entitled to presume he stands fairly and finally convicted, especially when, as here, he had already has a fair opportunity to present his federal claims to a federal forum." Frady, 456 U.S. at 164, 102 S.Ct. 1584. Moreover, a habeas motion may not be used to relitigate an issue that was raised and considered on direct appeal without some highly extraordinary circumstance, such as an intervening change in the law. Davis v. United States, 417 U.S. 333, 345, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations omitted); Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) ("Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.").

The Supreme Court has made clear that cause is measured by a stringent standard of diligence. See, e.g., Coleman v. Thompson,

501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("cause" is "something external to the petitioner" that "cannot be fairly attributed to him"; "[a]ttorney ignorance or inadvertence is not 'cause' ") (emphasis in original); Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)("[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim."). In this respect, the existence of cause to excuse a procedural default is dependent upon the petitioner's ability to show that some objective factor external to the defense impeded compliance with the procedural rules. Murray, 477 U.S. at 488, 106 S.Ct. 2678. A showing that the factual or legal basis for a claim was not reasonably available to counsel or that interference by some officials made compliance with the procedural rules impracticable, would constitute cause under this standard. Strickler v. Greene, 527 U.S. 263, 283, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

A showing of prejudice must be made along with the adequate showing of cause. Reed v. Farley, 512 U.S. 339, 358, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). In order to show prejudice, the petitioner must show a reasonable probability that the result of the trial would have been different had the claimed errors, which were procedurally defaulted, not occurred. Strickler, 527 U.S. at 289-90, 119 S.Ct. 1936. Furthermore, "the resulting prejudice

must create an actual and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170, 102 S.Ct. 1584. If a defendant fails to establish "cause" and "prejudice" to excuse a procedural default, he can obtain collateral review of his constitutional claim only by demonstrating that the constitutional error "has probably resulted in the conviction of one who is actually innocent." Bousley, 523 U.S. at 623, 118 S.Ct. 1604. The Supreme Court has emphasized that " 'actual innocence' means factual innocence, not mere legal insufficiency." Id. To establish actual innocence, petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quotations and citation omitted).

B. ENTITLEMENT TO A HEARING

Section 2255 provides that the court should hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 Rule 4(b) of the rules governing Section 2255 proceedings for the United States District Courts provides in pertinent part that "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district

court, the judge shall make an order for its summary dismissal and cause the movant to be notified." Id. The burden is on the movant to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1998). In considering a motion under § 2255, the district court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Moscruera, 845 F.2d 1122, 1124 (1st Cir. 1988).

The First Circuit has stated that no hearing is required where the § 2255 motion: (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. Moran v. Hogan, 494 F.2d 1220, 1222, (lst Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (lst Cir.), cert. denied, 493 U.S. 1078 (1990). Moreover, the First Circuit also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975 n.8 (lst Cir. 1989). A district judge's personal observation and recollection of the events at trial may, supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.1 (lst Cir 1978); United States v. DiCarlo, 575 F.2d 952, 954-955 (lst Cir. 1978).

In the instant case, no evidentiary hearing is required because all of Burks's claims can be resolved by reference to the record, and where the record does not exist by relying on the presumption of regularity and on the memory of the sentencing judge.[1]

C. INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court set forth the two-prong analysis for assessing claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The party advancing the claim must show: 1) that his attorney's performance fell below an objective standard of reasonableness, and 2) that he was prejudiced as a result of his attorney's deficient performance. Id.; United States v. Caggiano, 899 F.2d 99, 101 (1st Cir. 1990). A defendant must meet the heavy burden imposed by the law for each of these prongs, to make a successful ineffective assistance of counsel claim. Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). The defendant must establish that counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir.), cert. denied, 115 S. Ct. 517 (1994).

Courts are deferential in reviewing an attorney's

[1]The government will make additional sentencing transcripts available to the court should it deem it necessary for its review of the matter.

performance: an attorney must only provide reasonably effective assistance. Singleton, 26 F.3d at 238. The court must scrutinize counsel's conduct on the "... totality of the circumstances before it, and making every effort to eliminate the distorting effects of hindsight." Id. (quoting United States v. Nantel, 938 F.2d 302, 309-310 (1st Cir. 1993)). There is a "strong presumption that conduct falls within this wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1995)). Counsel need not jump through every conceivable hoop, nor engage in futile exercises, in order to be considered effective. United States v. Cronic, 466 U.S. 648, 656 n.19 (1984).

Even if the defendant proves that counsel's performance was objectively unreasonable, he cannot prevail unless he can also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984)(quoting Strickland, 466 U.S. at 693-694)(emphasis supplied). Thus "the court must not only find that defense counsel's performance was deficient, but that it was so prejudicial as to undermine confidence in the outcome."

Strickland, 466 U.S. at 689. If a claim of ineffective counsel can be disposed of on the ground of lack of prejudice, the court should do so. Perron, 742 F.2d at 673.

**IV. ARGUMENT**

1. Ineffecive Assistance of Counsel

Burks contends his counsel's performance was deficient because he failed to object to PSR's designation of Burks as a career offender. The argument is utterly frivolous.

First: Burks is a career offender. Burks does not question that he was convicted of a crime of violence. He would now like the court to believe that he was convicted simply of possession of marijuana. This is just false. Defendant was convicted of a reduced charge of possession of cocaine, manufacture/delivery/ possession with intent to deliver marijuana, and simple assault. Exhibit 1. Defendant is utterly dishonest in portraying his conviction as one for simple possession of marijuana. Rather, his conviction was unquestionably for a qualifying drug trafficking crime. Burks's trial attorney did not contest his career offender designation because doing so would have been in bad faith. Similarly, neither of Burks's appellate attorneys raised the claim that his prior convictions did not qualify as career offender predicates. Burks does not claim that his appellate attorneys were ineffective.

Second: Burks plainly waived this issue. He failed to raise

at either of his sentencing hearings. He did not raise it on his first appeal. He affirmatively stated in his joint motion to remand in the First Circuit that he did not contest the PSR's calculations. On his second appeal, Burks appeared to argue that the career offender provision offended the Sixth Amendment and that the Court should not have relied on it. Yet, even in that appeal, Burks did not argue that his convictions did not qualify as predicates for the career offender guideline. Burks was represented by a third attorney on his second appeal. Burks has not attempted to show cause as to why this issue was not raised before, nor can he show any cause. Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994); Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Third: insofar as Burks raised the career offender issue on his second appeal, the First Circuit squarely rejected his claim. First, the Court noted that the district court's sentence was reasonable. Second, it noted that the sentencing court "expressly looked . . . at what the Defendant's sentencing range would have been without the career offender provision." (Slip. Op. 4). Third, it found that the claim was "likely waived," but that even it were not, it lacked merit in light of First Circuit precedent. Burks cannot now re-litigate this issue on a collateral attack. Davis v. United States, 417 U.S. 333, 345, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

Fourth: even if this issue was not waived, forfeited, and in any event rejected on direct appeal, it cannot form the basis of an "ineffective assistance of counsel" claim because defendant cannot show any prejudice. Defendant was sentenced to a term of 120 months incarceration - - four years below the guidelines range determined by the Court. This was the sentence Burks asked for himself. At his sentencing, Burks stated that he wanted a sentence that was below 168 months. His counsel requested a sentence of 120 months. This is precisely the sentence that he got. Accordingly, defendant cannot show any prejudice whatsoever. Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984).

**V. CONCLUSION**

For all the aforementioned reasons, the United States requests that the petitioner's motion be denied and dismissed.

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Adi Goldstein
ADI GOLDSTEIN
Assistant U.S. Attorney
RI Bar #6701
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email: adi.goldstein@usdoj.gov

CERTIFICATE OF SERVICE

On this 27th day of November, 2007, I caused the Government's Objection to Petitioner’s Motion to Vacate, Set Aside, or Otherwise Correct Sentence and Memorandum in Support thereof to be filed electronically and it is available for viewing and downloading from the ECF system.

Notification by first class mail, postage prepaid:

Hiawatha Burks
Reg. No. 05235-07
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

/s/ ADI GOLDSTEIN
ADI GOLDSTEIN
Assistant U.S. Attorney
RI Bar #6701
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email adi.goldstein@usdoj.gov

[illegible] SHEET PRINTED [illegible] 1[illegible]-97

EFENDANT: [illegible] | CASE NUMBER [illegible]-97-[illegible]-A
---|---
| ORIGINAL CASE NUMBER:

[illegible]

POLICE DEPARTMENT
NEWPORT

ATE OF BIRTH 4-17-7[illegible] | BCI/ID NUMBER X0120948 | OFFENSE DATE 0[illegible]-0[illegible]-97 | ARREST DATE
---|---|---|---

DDRESS
8C ROLLING GREEN 3711
EWPORT RI

ATTORNEY OF RECORD: UHLMANN, DONNA A — TYPE: PRIVATE
PROS:

HARGING METHOD CHARGING DATE
OUNT STATUTE CHARGE INDEMNITY

OMPLAINT 05-15-97

1 21-28-4.01-A2A MANU/DELIVER SCH I/II CNTRL SUBS $150

5-15-97 CHARGE DISPOSED OF AT ARRAIGNMENT BY PLEA
DEFD PLEADS NOLO TO AMENDED CHARGE BEFORE JUDGE DARIGAN.
AMENDED CHARGE IS POSS COCAINE [illegible]
[illegible] SUSPENDED 3 YEAR(S)
PROBATION 3 YEAR(S)
DRUG EDUCATION FUND $400.00
[illegible] INDEMNITY FUND $270.00
PROBATION FUND $340.00

2 21-28-4.01-A2A MANU/DELIVER SCH I/II CNTRL SUBS $150

[illegible] CHARGE DISPOSED OF AT ARRAIGNMENT BY PLEA
DEFENDANT PLEADS NOLO CONTENDERE BEFORE JUDGE DARIGAN
[illegible] FULL SENTENCE 1 YEAR(S)
TERM TO SERVE 3 MONTH(S)
SUSPENDED 9 YEAR(S) 9 MONTH(S)
[illegible]-15-97 PROBATION 9 YEAR(S) 9 MONTH(S) TO COMENC ON RELEASE

3 11-05.0-03.0 SIMPLE ASSAULT/BATTERY $090

5-15-97 CHARGE DISPOSED OF AT ARRAIGNMENT BY PLEA
DEFENDANT PLEADS NOLO CONTENDERE BEFORE JUDGE DARIGAN.
5-15-97 FULL SENTENCE 1 YEAR(S)
TERM TO SERVE 3 MONTH(S)
SUSPENDED 9 YEAR(S) 9 MONTH(S)
5-15-97 PROBATION 9 YEAR(S) 9 MONTH(S) TO COMENC ON RELEASE

EVENTS

5-15-97 NSC DARIGAN, J. AT ARRAIGNMENT, CASE IS DISP/SENT

CRIMINAL FACE SHEET PRINTED ON [illegible]

DEFENDANT: BURKS, HIAWATHA CASE NUMBER N2-97-0141-A
ORIGINAL CASE NUMBER.

[illegible] 666 DEFENSE ATTORNEY DONNA A UHLMANN PRESENT.
PROSECUTOR WHITE PRESENT.

DOCUMENTS FILED

| | | |
|---|---|---|
| 5-15-97 | 1 PETITION TO WAIVE INFORMATION | BY DEFENSE |
| 5-15-97 | 2 CERTIFICATE OF JUDGE | BY COURT |

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# REQUEST TO ENTER PLEA OF NOLO CONTENDERE OR GUILTY

☑ SUPERIOR COURT ☐ FAMILY COURT

| | |
|---|---|
| 1. STATE OF RHODE ISLAND VS. hiawatha burks | 2. CASE NO. N2/97-0141 |
| 3. CHARGES (1) poss c/s - coca (2) poss mj w/int (3) assist p/o | 4. PENALTY (1) 3yrs ACI (2) 30 yrs ACI (3) 1 yr ACI |

I, the above named defendant, do hereby request Court permission to withdraw my present plea of **Not Guilty** and to enter a plea of **Nolo Contendere** or **Guilty**. I understand the plea of **Nolo Contendere** is for all purposes the same as a plea of **Guilty** and that I will be admitting sufficient facts to substantiate the charge(s) which has (have) been brought against me in the case to which this plea relates. I understand by changing my plea I will be giving up and waiving each and all of my following rights:

1. My right to a trial by jury or by a Judge, sitting without a jury, and my right to appeal to the Supreme Court from any verdict or finding of guilt.
2. My right to have the State prove each and every element of the charge(s) against me by evidence and proof beyond a reasonable doubt.
3. My right to the presumption of innocence.
4. My privilege against self-incrimination.
5. My right to confront and cross-examine the State's witnesses against me.
6. My right to present evidence and witnesses on my own behalf and to testify in my own defense if I choose to do so.
7. My right to appeal to the Rhode Island Supreme Court from the sentence imposed by the Court after the entry of my plea of **Nolo Contendere** or **Guilty**.
8. My right to have the Court obtain and consider a pre-sentence report before the imposition of sentence by the Court.

No promises have been made to me by my Attorney, the State's Attorney, or the Court, other than the fact the Court has agreed to impose the following sentence in addition to whatever money costs are imposed by law.

5. SENTENCE (1) 3 years ~~suspended~~ / susp w/prob (2) 6 yrs ACI; 90 days serve; retroactive to 5/1/97; balance suspended w/ probation (3) 1 year ACI; 90 days serve; balance suspend w/ probation

I understand if the Court imposes the sentence referred to above, I will not be permitted to withdraw my plea of **Nolo Contendere** or **Guilty** except by permission of the Court.

I have discussed the entire contents of this form with my Attorney, who has explained it to me. I have no questions as to what it states and means, and I understand it completely. **I swear to the truth of the above.**

| | |
|---|---|
| 6. *WITNESS (Attorney for the Defendant) Signature [signature] DATE 5/14/97 Print Name Donna [illegible] Registration No. 3711 | 8. DATE/TIME STAMP |
| 7. DEFENDANT DATE 5/14/97 Signature Print Name Hiawatha Burks | |

J-1 (Rev. 7/89) CERTIFICATE OF JUDGE--ON REVERSE SIDE

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

NEWPORT , Sc SUPERIOR COURT

State of Rhode Island

vs. CASE NO. N2970141A

HIAWATHA BURKS

JUDGMENT OF CONVICTION
AND COMMITMENT

On this date, 05-15-97 came the attorney for the State, WHITE and the defendant who appeared in person and by counsel, namely DONNA A UHLMANN before Judge DARIGAN .

IT IS ADJUDGED that the defendant upon a PLEA of NOLO CONTENDERE of the offense(s) of:

COUNT 001 POSS COCAINE

SUSPENDED 3 Year(s)

PROBATION 3 Year(s)

DRUG EDUCATION FUND
Amount $400.00

INDEMNITY FUND
Amount $270.00

PROBATION FUND
Amount $540.00

COUNT 002 MANU/DELIVER SCH I/II CNTRL SUBS

FULL SENTENCE 6 Year(s)

TERM TO SERVE 3 Months

SUSPENDED 5 Year(s) 9 Months

PROBATION 5 Year(s) 9 Months TO COMENC ON RELEASE

COUNT 003 SIMPLE ASSAULT/BATTERY

FULL SENTENCE 1 Year(s)

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

NEWPORT , Sc. SUPERIOR COURT

State of Rhode Island

vs. CASE NO. N2970141A

HIAWATHA BURKS

TERM TO SERVE 3 Months

SUSPENDED 9 Year(s) 9 Months

PROBATION 9 Year(s) 9 Months TO COMENC ON RELEASE

as charged in the COMPLAINT and the COURT having asked the defendant whether he/she has anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the COURT,

IT IS ADJUDGED that the defendant IS GUILTY as charged and convicted

IT IS ORDERED that the Clerk deliver a certified copy of this judgment to the Proper Authority of the Adult Correctional Institutions and that the copy serve as the commitment of the defendant.

TRUE COPY ATTEST [signature] Asst. CLERK

[signature] JUSTICE, SUPERIOR COURT

05-15-97 DATE EEB

STATE OF RHODE ISLAND
DISTRICT COURT
CRIMINAL COMPLAINT

| DISTRICT COURT NO. | COURT DIVISION | POLICE NO. |
|---|---|---|
| 9700988 | 2nd | 97-13057 |

STATE EX REL. VS. DEFENDANT (NAME AND ALIAS): Hiawatha D. Burks, alias John Doe

DEFENDANT ADDRESS AND PHONE: 18C Rolling Green, Newport, RI 846-0716
(STREET / CITY / STATE / PHONE)

| DEF. D.O.B. | DEF. BCI NO. | DEF. SOC. SEC NO. | DEF. M.V. LIC. NO. |
|---|---|---|---|
| 4/17/77 | | | |

OFFENSE DATE: 5/1/97 ☐ DIVERS DATE
OFFICER/COMPLAINANT: Sgt. Norman G. Bestoso
POLICE DEPT./COMPLAINANT ADDRESS: Newport Police Department, 120 Broadway, Newport, RI

| DETERMINE ATTY DATE | PRE TRIAL DATE |
|---|---|
| PRE-ARRAIGN CONF DATE 6/24/97 | TRIAL DATE |
| SUPERIOR CT ARRAIGN DATE | ~~MISC DATE~~/BAIL HRG/~~CONTROL~~ |

TO ANY JUDGE OR JUSTICE OF THE PEACE: ON BEHALF OF THE STATE I SWEAR THAT THE ABOVE DEFENDANT DID COMMIT THE FOLLOWING OFFENSES:

| OFFICER/COMPLAINANT | DATE | SWORN TO BEFORE JUDGE/JUSTICE OF THE PEACE | DATE |
|---|---|---|---|
| X Sgt. [signature] | 5/2/97 | X [signature] | 5-2-97 |

## INITIAL APPEARANCE

| APPEARANCE DATE | BAIL FOR ALL COUNTS | ARRAIGNMENT DATE | JUSTICE OF THE PEACE |
|---|---|---|---|
| | $ | | |

## ARRAIGNMENT

| ARRAIGNMENT DATE | ADVISED OF RIGHTS | JURY TRIAL WAIVED | PLEA COUNT 1 | PLEA COUNT 2 | PLEA COUNT 3 |
|---|---|---|---|---|---|
| 5-2-97 | ☒ YES ☐ NO | ☒ YES ☐ NO | | | |
| BAIL FOR ALL COUNTS: $ 1 + WOB. | ATTORNEY NAME: Donna Uhlman? | ☒ PRIVATE ☐ COURT APPT. ☐ P.D. | JUDGE/JUSTICE OF THE PEACE: X [signature] | | |

**COUNT 1** STATUTE(S) VIOLATED: 21-28-4.01 A2A ☒ FELONY ☐ MISDEMEANOR ☐ VIOLATION ☐ ORDINANCE

N2-96-237A

Did unlawfully possess with the intent to deliver a controlled substance, to-wit Cocaine, as set forth in Scedule II of 21-28-2.08 of the general laws as amended, in violation of 21-28-4.01 A 2 A of the general laws as amended.

5-2-97 State opposes bail

DISPOSITION: ☐ DISMISSAL ☐ GUILTY PLEA ☐ NOLO PLEA ☐ GUILTY FINDING ☐ NOT GUILTY FINDING ☐ CASE FILED 1 YEAR ☐ INFO/TRUE BILL ☐ NO INFO/NO TRUE BILL ☐ OTHER

SENTENCE IMPOSED: No Plea

PROCEEDING: ☐ ARRAIGN ☐ PRE TRIAL ☐ TRIAL ☐ OTHER | APPEAL TAKEN ☐ | JUDGE X | DATE

**COUNT 2** STATUTE(S) VIOLATED: 21-28-4.01A2A ☒ FELONY ☐ MISDEMEANOR ☐ VIOLATION ☐ ORDINANCE

Did unlawfully possess with the intent to deliver a controlled substance, to-wit Marijuana, as set forth in Scedule I of 21-28-2.08 of the general laws as amended, in violation of 21-28-4.01 (A) (2) (A) of the general laws as amended.

5-2-97 State opposes bail

DISPOSITION: ☐ DISMISSAL ☐ GUILTY PLEA ☐ NOLO PLEA ☐ GUILTY FINDING ☐ NOT GUILTY FINDING ☐ CASE FILED 1 YEAR ☐ INFO/TRUE BILL ☐ NO INFO/NO TRUE BILL ☐ OTHER

SENTENCE IMPOSED

R.I. SUPREME COURT
I hereby certify that the document is an exact photographic reproduction of the original document on file in the Supreme Court Records Center.
[signature] 11/13/02

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA *

VS. *

HIAWATHA BURKS *

* * * * * * * * * * * * * * * *

C.R. NO. 02-095ML

JUNE 30, 2005
10:30 A.M.

PROVIDENCE, RI

BEFORE THE HONORABLE MARY M. LISI,

DISTRICT JUDGE

(Sentencing Hearing)

APPEARANCES:

FOR THE GOVERNMENT: ADI GOLDSTEIN, ESQ.
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: JOSEPH L. DeCAPORALE, JR., ESQ.
400 Reservoir Avenue
Providence, RI 02905

Court Reporter: Karen M. Zinni, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

30 JUNE 2005 -- 10:30

THE COURT: This is the matter of the United States versus Hiawatha Burks. The matter is before the Court this morning for resentencing. Apparently this matter was on appeal at the time that the *Booker* decision was handed down by the Supreme Court, and the parties agreed that the matter should be sent back to the District Court for resentencing with the precept of *Booker* in mind.

When I sentenced Mr. Burks the first time under what was then mandatory guideline sentencing, Mr. Burks was sentenced as a career offender to the lowest term possible, then possible, under the sentencing guidelines, and that was a term of 168 months.

Ms. Goldstein, would you like to be heard on sentence?

MS. GOLDSTEIN: Your Honor, as you may recall, and I have reviewed the sentencing transcript from the last time prior to today's hearing, there was quite an extensive sentencing hearing.

THE COURT: Do you have a copy of that transcript handy?

MS. GOLDSTEIN: Yes, I do, your Honor. Would you like to --

THE COURT: Yes.

THE CLERK: It's in the court file.

THE COURT: I didn't realize that. Thank you. Go ahead, Ms. Goldstein.

MS. GOLDSTEIN: Your Honor, I don't know how much of the argument the Court would like me to restate right now. I would adopt the entirety of my argument that I made last time.

And I believe, to make a long story short, I believe that the sentence imposed by the Court last time, 168 months, was a fair and reasonable sentence. It was fair and reasonable then, it was the dictates of the guidelines range, and I believe it's fair and reasonable now under the precepts of 18 U.S.C. 3553(a).

The offenses committed by Mr. Burks were very serious. There were numerous sales of crack cocaine and heroin; and during the execution of a search warrant at Mr. Burks' house, two firearms were seized, one of which was loaded, one of which had ammunition directly next to it. That one was in a child's room.

There was a significant amount of heroin and cocaine seized from that apartment, also stashed in different locations in the apartment.

And so the offenses were very serious; and as implied by the very fact that he was sentenced as a

career offender, Mr. Burks' criminal history was very serious. It was significant for an assault with a deadly weapon where he shot at another person. It was significant for other distribution offenses.

And in light of that fact, in light of the short period of time in which Mr. Burks continued to commit criminal offenses even as he was on pretrial release, even as he received very lenient sentences from state courts, I believe that the Court at the last sentencing took all of those factors into account in pronouncing a sentence.

And the Government would respectfully ask the Court to reimpose the same sentence of 168 months, three years supervised release and the $700 mandatory assessment. There was no fine imposed last time. The Government does not ask for one at this time.

THE COURT: Okay.

MR. DeCAPORALE: Your Honor, this is a matter that troubled me at the time; and I haven't had an opportunity to review the transcript of the sentencing hearing, but I --

THE COURT: Do you want to do that now? We can recess for a few moments while you do that.

MR. DeCAPORALE: Can I do that, please?

THE COURT: Sure. You'll have to borrow

Ms. Goldstein's because I'm going to take this one.

MR. DeCAPORALE: Okay. Thank you, your Honor.

THE COURT: We'll take about a 10-minute recess to give you an opportunity to do that.

MR. DeCAPORALE: Thank you.

(Recess)

THE COURT: Mr. DeCaporale, have you had an opportunity now to read that transcript?

MR. DeCAPORALE: I have, your Honor. Thank you for that opportunity. You know, I, too, will be as brief as possible relative to not repeating what has already been said and what's reflected very clearly in the transcript regarding this individual.

I found in refreshing my recollection here that even at the time of sentencing, I felt very strongly that this was an unusual case and a case that really reflected the lack of flexibility in the guidelines and the lack of or the depriving of the Court the discretion that you might or might not have taken had you had the opportunity to do so.

I would simply reiterate to the Court that this young man's, and he's a young man, his background was such that I think mitigated toward a sentence that -- I think the terms I used was, you know, we can't lock him up and throw away the key. I think it mitigated

towards something that was short of the 168-month guideline, even though that was the low end of the guideline.

And I'm not going to get into the background, the way he was brought up, the things that he was subjected to as a young man, as a boy. However, I would point out to the Court as reflected in his letter of acceptance of responsibility that he appreciates what he did was wrong. He appreciates that what he did that is not within the jurisdiction of this Court prior to this Indictment was wrong.

And I believe that he's been incarcerated for three years; and since he's been incarcerated, I personally have not seen him, but I have noticed in a very brief discussion with him a person who I believe has finally come to grips with the realities of this situation.

You know, since he's been incarcerated, I have many Certificates of Completion of some very sophisticated programs that he was involved in while he was in Beaumont, Texas, legal research, finance. He's taken courses in parenting. He's been involved in drug programs.

This is a kid that, as you pointed out, was in a situation to earn himself a good, good living after

receiving his bachelor's degree in heating and air conditioning.

So to bring it to a conclusion, your Honor, I would suggest to you that 168 months' incarceration is unreasonable, and I would suggest to you that -- and I would argue to you that based on what you know about him and what is reflected in the transcript which you considered initially and when you said that, whether or not you agreed with the sentence, you don't make the law, you follow it, I think taking all that into consideration and what he's done up until this point, and I don't know if he wants to address the Court, but perhaps he does, I would suggest that a 120-month sentence would be appropriate in this case.

Ten years is a long time. Fourteen years is much longer. He's in touch with his son. He's in touch with the mother of his son. He's trying to nourish that relationship. And if there was ever a case where I would urge you to exercise some discretion now that you have the right to do that, this would be it. Thank you for your time and consideration, your Honor.

THE COURT: Okay. Mr. Burks, is there anything you'd like to say on your own behalf?

THE DEFENDANT: Yes, if I may.

THE COURT: Would you turn that on for him, please.

THE DEFENDANT: Yes, if I may. I would like to just address the Court. I mean, I know the crimes that I committed and that I pleaded guilty to I took total and full responsibility of, but I have rehabilitated myself during the time of my incarceration.

I haven't received any incident reports. I've been working for the whole time that I've been incarcerated for Unicorps and also on the compound, like, doing other things and throughout the institution.

THE COURT: What are you doing for Unicorps?

THE DEFENDANT: I'm actually -- well, I just left Beaumont, Texas, where I was sewing Army fatigue together, pants, making it for the troops. And I just -- because of my good conduct, I got transferred to a lower facility, to a medium. And I've taken many classes, business planning, real estate, mutual fund, typing, legal research, computers, from Lamar State University, industrial sewing. I'm in the HVAC field working there, too, as a second job.

I send as much money as I make after paying my fine home to my son. I constantly -- I write my son. I want to be in his life, but there's only so much I

can do from so far away. Not everyone has the means to get back and forth to court.

I really feel like, I mean, like I stated at my sentencing, that maybe had I been sentenced harsher in my past for the crimes I committed, I may not be where I am today; but I really don't feel that I am a true career offender. I really feel my case is outside of the heartland.

THE COURT: There's that legal research coming through.

THE DEFENDANT: Yes, a little bit. I'm not trying to undermine the Court's authority or anything.

THE COURT: I understand.

THE DEFENDANT: But I really -- I just -- I really feel that, I mean, I haven't committed what they really call a true career criminal. I really haven't committed the recidivism that it brings to call me a true career criminal.

I haven't done any time. I've done 90 days in my prior. That's the only time I've done incarcerated. I haven't committed the same exact crimes, but I have committed crimes that I pleaded guilty to.

I didn't -- recently, like, I tried to object at my earlier sentencing to the probation report as how they scored me, but I don't -- I really don't know how

they go about scoring and everything there.

THE COURT: I don't understand what you mean.

THE DEFENDANT: I mean, I'm talking about as far as the career offender status. I really didn't feel that --

THE COURT: Well, that's a real simple one. That's statutory. If you've committed two offenses before this one and you were 18 years old at the time, either of those offenses are either crimes of violence or drug trafficking offenses, and you had two of them, on the third one you're classified as a career offender. It's as simple as that.

THE DEFENDANT: All right.

THE COURT: So the probation officer was correct. At age 18, you had the ADW where you took a pistol and shot at somebody. Fortunately for you you missed. Fortunately for him you missed. And then at age 20 you had -- you pled guilty to a drug trafficking offense in state court.

So with this third one, that's what classifies you as a career offender. It doesn't matter how much time you did or didn't do.

THE DEFENDANT: All right. Well, now that I understand that a little better, I mean, I'm just really going to stick with my original statement. I

really just don't feel that I'm a true -- I am a career offender. I really feel like I should be sentenced under the 168 months.

THE COURT: What do you think -- what are you going to do when you get out? What is your plan for when you get out?

THE DEFENDANT: My plan is to get back into my technical field, work as an HVAC technician and to spend as much time with my son so he would never have to come before any courts at all. My main focus on life is my son. That's my -- I mean, I know that -- I know and I've learned from my experience.

THE COURT: You're going to come back to Newport?

THE DEFENDANT: Excuse me?

THE COURT: Are you going to come back to Newport, Portsmouth, wherever you were living?

THE DEFENDANT: Yes, just to obtain my son. I'm really trying to proceed and move somewhere else where actually I feel there's more opportunity in my field.

THE COURT: Well, and it might also take you out of the environment where your friends are going to come knocking on your door looking for crack.

THE DEFENDANT: That's true, too. I found out that there's a thin line between friends and enemies.

I mean, your friends could be your worst enemies.

THE COURT: Well, you can be your own worst enemy, too.

THE DEFENDANT: Yeah, that's true, too.

THE COURT: This was a difficult case for the Court because the Defendant had a limited record as an adult. In the recess I also checked with the probation officer to see precisely what his juvenile record was.

Mr. Perry informs me that although the Defendant had some convictions in Family Court, that those would not be countable in terms of his criminal history here and that although he received at least one sentence at the training school, which I think we talked about at the last sentencing, that the Defendant's record of convictions is pretty much set forth in the pre-sentence report that had been prepared by probation.

There was another matter that apparently we spent a little bit of time on at the previous sentencing hearing, and that was the fact that the Government had not in this case filed a motion so that the Defendant could receive the additional one-point reduction in offense level.

And I think Mr. DeCaporale may have said something along the lines of, Well, that was because of

the change in counsel, and there was a change in counsel here.

Is the Government taking any position on that today? Have you reconsidered that?

MS. GOLDSTEIN: Your Honor, the plea agreement was very favorable to the Defendant in that the Government agreed to dismiss the 924(c) count that would have given him consecutive five years as well as an 851 enhancement that had already been filed.

The matter pled very close to the time of trial; and the Government did, in fact, expend considerable resources at the time preparing for trial, getting witnesses ready. And so at that time the Government did not feel that the third point was an appropriate motion for the Government to make.

THE COURT: Okay. Okay. Mr. Burks, I explained to you this morning why you are considered to be a career offender. You're a career offender because at age 18 you took a gun and fired it at someone, and you were convicted of that offense. At age 20, you pled guilty to the manufacture and delivery of a controlled substance. And so by definition, with this conviction, you are what is known as a career offender under federal law.

Since the Supreme Court issued the *Booker*

decision, what it does is give federal judges a bit more discretion, in fact a great deal more discretion than we had pre-*Booker* when the sentencing guidelines were mandatory.

And at the time of your sentencing, I indicated that I wasn't sure whether that would be the sentence I would impose. I know the Government asked for 180 months, and I went to the low end of the guidelines because I thought that a sentence of 14 years was certainly going to be sufficient to accomplish the goals of sentencing.

We have several things at play in this case, and I'm going to list them now. First is the matter I just addressed to Ms. Goldstein, and that is that ordinarily in these circumstances the Government files a motion so that the Defendant can get some relief under the guidelines; and that was that additional third-point reduction for acceptance, timely acceptance of responsibility.

I understand that there was a change of counsel in this case and that the Defendant here had indicated his intent to go to trial. I understand that that put the Government to its proof, but it's something I take into account.

Had the Government filed that motion, the

guideline range in this case would have been 151 to 188 months; and in all likelihood I would have sentenced at the low end, again, because 151 months is a very, very long sentence.

I also looked in this case at what the Defendant's sentencing range would have been without the career offender provision. And by my determination, the Defendant would have been, with that third point of acceptance, in a range of 70 to 87 months of incarceration or somewhere around 6 or 7 years as opposed to the 14 or so at the low end of the career offender provisions.

I also looked at what the range would have been had the crack cocaine in this case been treated as powder or had the same treatment under the law as powder because his guideline range, the 70 to 87 months with the third point or 78 to 97 months without it, is really driven by that seven-and-a-half grams of crack, which not only this Court but numerous judges and scholars and even members of Congress have acknowledged is an artificial inflation in sentencing.

And if the crack in this case had been counted as powder, the Defendant's sentence would have been somewhere in the 24- to 30-month range.

So we have an enormous discrepancy here between

what I call the actual conduct and how it would have been treated under the guidelines without the artificial inflation for crack and without the treatment as a career offender.

And as I consider the range of 24 months to 210 months, which is what you have when you really take all of those factors into account, you really begin to wonder whether or not the guidelines, as the Government says here, are presumptively reasonable when you have such enormous disparities as you look at the actual offense conduct in this case.

I understand and I take into account the fact here that the Government has already given Mr. Burks a huge break by the dismissal of the 851 and the other -- there was another sentence enhancer in there. Was it a 924(c)?

MS. GOLDSTEIN: It's the 924(c), your Honor.

THE COURT: So you already got a huge break, Mr. Burks, you see, by virtue of the plea that your lawyer negotiated for you. The Government already gave you a five-year break because those were consecutive sentences to whatever I impose.

Now, I have to take into account the fact that you truly are to be considered a career offender under the law, not the guidelines, under the law. And what

the law says is that it directs the Sentencing Commission to come up with a range of sentences that puts you near the statutory maximum penalty, which in this case for the drug charges is 20 years and for the gun charge is 10 years.

So I take that into account as well, and then I take into account Section 3553. What that says is that the Court shall impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in Section (a)(2).

The first of those is that we have to reflect -- the sentence has to reflect the seriousness of the offense. Mr. Burks, you were dealing with a lethal combination, drugs and guns, and you had the stuff in your baby's room. I've already talked about that the last time you were here. I'm not going to go through that again. You know how I feel about that.

The sentence has to promote respect for the law, and in that regard I say the sentence has to make sense. And so that's why I went through the exercise I just went through with what sentence really makes sense here because a sentence in order to promote respect for the law has to make some sense, and it also has to provide just punishment.

I have to make sure that it deters additional

criminal conduct. I have to make sure that the sentence protects the public from further crimes of this Defendant and that it will provide the Defendant with needed educational or vocational training, medical care or other correctional treatment.

And it appears that you have done what I suggested you do and that is to take advantage of any program you can within the federal system to get yourself educated to make sure that you don't go back out and continue on the life of a drug dealer.

Taking all of those factors into account, I have come to the conclusion here that a sentence of 120 months is certainly sufficient, but not greater than necessary, in order to accomplish all of those goals of sentencing.

The sentence I imposed initially was one that I was required to impose, but it was not a sentence that I felt was truly just and truly in keeping with the law. I think it also does satisfy the concerns of Congress under the career offender provisions because it is at the midway point toward a 20-year sentence on the drug counts and it is at the maximum for the gun charge in this case.

And so the sentence I impose is 120 months on all counts to be served concurrently with each other.

Upon release from incarceration, the Defendant will be on supervised release for three years, during which time he is to participate in a drug treatment program and to provide tests, up to 72 a year, to make sure that you're not using again.

I'm not going to impose a fine in this case since any money that he earns should go toward paying the special assessment which I'm about to impose and to care for the child that he's financially obligated to support. I must impose the special assessment of $100 per count for a total of $700.

Mr. Burks, I know you already know that you have rights of appeal. I'm going to have to tell you again you have a right to take an appeal from the sentence I've imposed today. If you can't afford an attorney to help you with an appeal, you should advise us, and counsel will be appointed for you. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If you want to take an appeal, you have only 10 days from today within which to file that Notice of Appeal. If you don't file your Notice of Appeal within 10 days of today, you will have lost your right to take an appeal. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Burks, I think the sentence I've imposed here today is reasonable. That's what the Supreme Court has asked us to do. It's long enough to impress upon you the need to change your ways, it's long enough to punish you for what you've already done, and it should be long enough to deter you from going out and doing it again.

At the same time it should give you ample opportunity to get yourself straightened out and make up your mind that you're not going to go out there and be a drug dealer again.

You have the potential to be a success story. All you've got to do is what you've been doing, and that is to get your act cleaned up and look now toward the day when you're going to get out and have a plan in place. If it means that you move out of Rhode Island, I would suggest that you do that.

You can work with probation to get your supervised release transferred to somewhere else because if you go back to Newport County, you're only going to go back to the same people that you were dealing to when you were here, and they're going to expect you to keep dealing.

So you may want to think long and hard about not coming back and going someplace else where you can get

a fresh start. With your education and your experience, you should be able to find work. Good luck to you. Anything further from the Government?

MS. GOLDSTEIN: Nothing further, your Honor.

THE COURT: Mr. DeCaporale?

MR. DeCAPORALE: Nothing, your Honor.

THE COURT: And thank Mr. DeCaporale as well because he's the one that got you back here. You should also thank Ms. Goldstein because she agreed.

MR. DeCAPORALE: Thank you, your Honor.

THE COURT: Something, Mr. DeCaporale? Did he tell you thank you?

MR. DeCAPORALE: He did, your Honor.

THE COURT: Well, that's about as good as it gets.

MR. DeCAPORALE: That's it.

THE COURT: Did you thank the prosecutor?

THE DEFENDANT: Thanks.

THE COURT: Okay. Good luck to you, Mr. Burks.

(Adjourned)

C E R T I F I C A T I O N

I, Karen M. Zinni, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Karen M. Zinni

Karen M. Zinni, RPR-RMR-CRR

10-19-05

Date